WILLIAM R. FERRY et al., Appellants, *v.* REBECCA SAMPSON et al., Appellants; HERMAN WRONKOW, Respondent.

One A. died in 1833 seized of certain premises in the city of New York. By his will he devised them to his son R. The latter, whose domicile was in said city, left there prior to 1842, being then unmarried and twenty or twenty-one years of age. He returned on a visit that year and went away again, and in 1846 wrote his mother from Missouri that he was on his way home *via* New Orleans. This was the last heard from him. Until then he had frequently written to his mother. After 1846 letters were addressed to him by members of the family which were never answered, and fruitless inquiries were made to learn if he was alive. His relatives generally believed him to be dead, and his mother, as his heir, took possession of the premises in question and built upon them. She died in 1859. The family never heard that R. had been married, and no widow or issue ever appeared to claim any interest in his estate. The purchaser, at a partition sale of the premises, made in 1887, declined to complete his purchase on the ground that R. was not shown to be dead, or to have died intestate, or without a widow or issue surviving him. *Held*, untenable; that the circumstances pointed unequivocally to the death of R., intestate, long before the sale, without leaving a widow or children surviving; that his title passed to his mother and his brothers and sisters, and as they, with their descendants, were made parties to this action, the purchaser should complete his purchase.

The rule is not absolute that a disputable fact, supposed to cloud the title, which is not determined by the judgment in an action for partition, is, in every case, a bar to the enforcement of the sale under the judgment. If the existence of the alleged fact is a possibility merely, or the alleged outstanding right a very improbable and remote contingency, the court may, in its discretion, compel the purchaser to complete his purchase.

*It seems*, however, such discretion is to be carefully exercised, and only in a case free from reasonable doubt.

(Argued January 15, 1889; decided March 5, 1889.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, entered June 19, 1888, which affirmed an order of Special Term granting the motion of a purchaser at a partition sale herein to be released from his purchase.

The parties to the action were the brothers and sisters and the descendants of brothers and sisters of Robert Waite Armstrong, who acquired title to the premises in 1833, as devisee

under the will of his father. The purchaser refused to complete his purchase on the ground that said devisee was not shown to be dead, or to have died intestate, or without a widow or issue surviving him.

The material facts are stated in the opinion.

*Henry H. Man* for appellants. The judgment of the Supreme Court binds all parties having any possible right in or to the premises sold, and no error in that judgment can affect the title of the purchaser. (*Blakely* v. *Calder*, 15 N. Y. 617; *Howell* v. *Mills*, 56 id. 226; 7 Lans. 193, 195; *Cromwell* v. *Hull*, 97 id. 209; *Reed* v. *Reed*, 107 id. 545; *Burhans* v. *Burhans*, 2 Barb. Ch. 398, 408, 409; *Jenkins* v. *Van Schaick*, 3 Paige, 242; *Jordan* v. *Van Epps*, 85 N. Y. 427, 435.) Section 445 of the Code, requiring the court to open a judgment by default against a party served by publication does not apply to partition. (Code, § 1557, subd. 1; *McCall* v. *McCall*, 54 N. Y. 541; *Dinsmore* v. *Adams*, 49 How. Pr. 238; *Brown* v. *Brown*, 58 N. Y. 609; *In re Buffalo*, 78 id. 362, 370.) The order of the Supreme Court is reviewable here. (*Brevoort* v. *Brevoort*, 70 N. Y. 136; *De Forest* v. *Farley*, 62 id. 628; *In re N. Y. P. E. P. School*, 31 id. 574, 587, 588.) There was proof that the appellants are now the only persons interested in the property sold, sufficient not only to authorize but to require the judgment which the Supreme Court rendered, and under which the sale was made. (1 R. S. 750, pt. 2, chap. 1, tit. 5, § 6; Code, § 841; *King* v. *Paddock*, 18 Johns. 141; *Eagle* v. *Emmet*, 4 Brad. 117; Lawson on Presumptive Evidence, 197, Rule 41; *In re N. Y. P. E. P. School*, 31 N. Y. 574; *Clark* v. *Owens*, 18 id. 434, 442; *Jackson ex dem. Miner* v. *Boneham*, 15 Johns. 226; 1 Greenleaf on Evidence, §§ 102–104; 2 id. 278 g.)

*D. Solis Ritterband* for respondent. A purchaser at a judicial sale will not be compelled to take a doubtful or unmarketable title. (*Shriver* v. *Shriver*, 86 N. Y. 575; *Fleming* v. *Burnham*, 100 id. 1; *Hellreigel* v. *Manning*, 97 id. 56.)

ANDREWS, J. We think the objection to the title on the ground that Robert Waite Armstrong, the devisee of the premises under the will of his father, was not shown to be dead, or if dead, that it was not shown that he died intestate, or leaving no widow or issue surviving, ought not to have prevailed. The testator died February 1, 1833, and his will was proved March 20, 1833. It was shown that Robert Waite Armstrong, whose home and domicile were in the city of New York, being then unmarried, went away from home prior to 1842, being then twenty or twenty-one years of age. He returned to New York on a visit in that year, and went away again, and in 1846 wrote his mother from Missouri, stating that he was on his way home by way New Orleans. This was the last that has been heard from him. Up to the year 1846 he was accustomed to write his mother frequently. After 1846 letters were addressed to him by members of the family but no answers were received, and fruitless inquiries were made to ascertain whether he was alive. It was generally believed by his relatives and friends that he was dead ; and his mother some years afterwards, believing that she was entitled to the premises as his heir, erected houses on the land. The mother died in 1859. The family never heard that Robert Waite Armstrong had been married, and no widow or issue has ever appeared to claim any interest in the land. It is possible that Robert Waite Armstrong may be living or that he may have died leaving a widow and children. If either of these facts existed, the title is imperfect, unless, indeed, as is claimed, the judgment in partition concludes Robert Waite Armstrong, or any widow or issue left by him, from now asserting any title to the premises, a point which we do not consider.

The presumption of the death of Robert Waite Armstrong intestate, and without leaving a widow or children surviving, is, upon the facts disclosed, very strong, amounting to scarcely less than certainty. It cannot be doubted that he knew of the devise to him in his father's will. He was a necessary party to the probate. In 1842 he was, as one witness testifies, about

twenty-five years of age, and when here at that time it is extremely improbable that he did not learn of the provisions in his father's will, if he did not know of them before. The presumption of his death does not depend simply upon the lapse of time. It is enforced by the fact that he had a valuable interest in property, which, if living, he would, according to common experience, have long since asserted and claimed. But for forty years it has been in the undisturbed possession of his mother and his collateral kindred, claiming by descent from him. Meanwhile, neither Robert Waite Armstrong, nor anyone claiming to be his widow or issue, has given the least sign. It is scarcely conceivable that if he had wife or children, he would not have informed them of this inheritance. It is well settled that a purchaser on a judicial sale is entitled to a marketable title, that is, a title free from reasonable doubt; and courts are not disposed to compel a purchaser to take title where a doubtful question of fact relating to an outstanding right is not concluded by the judgment under which the sale is made. (*Fleming* v. *Burnham*, 100 N. Y. 1, and cases cited.)

But the rule is not absolute that a disputable fact, not determined by the judgment, is in every case a bar to the enforcement of the sale. It depends in some degree on discretion. If the existence of the alleged fact which is supposed to cloud the title is a possibility merely, or the alleged outstanding right is a very improbable and remote contingency, which, according to ordinary experience, has no probable basis, the court may, I suppose, compel the purchaser in such a case to complete his purchase. It is needless to say that the discretion is to be carefully and guardedly exercised, and only where the case is free from reasonable doubt. We think the circumstances in this case point unequivocally to the death of Robert Waite Armstrong long before the sale in partition, leaving no widow or children surviving, and that it is beyond reasonable doubt that his title passed by his death to his mother, and his brother and sisters and their descendants. Judge Denio had occasion to consider a somewhat similar question in *Matter of New York*

*Protestant School* (31 N. Y. 587, 588); and Chancellor KENT in *McComb* v. *Wright* (5 Johns. Ch., 263), enforced specific performance of a contract for the sale of land on the presumption of death without issue of John Ogilvie, an absentee for "over forty years." On the whole, we think the objection of the purchaser was untenable, and that, according to the rules of equity applied in such cases, he ought not to have been released from his purchase.

The orders of the General and Special Terms should, therefore, be reversed and the proceedings dismissed.

All concur.

Ordered accordingly.