(69 Misc. Rep. 223.)

EBERT v. HANNEMAN et al.

(Supreme Court, Special Term, Kings County. October 28, 1910.)

1. MORTGAGES (§ 564*)—FORECLOSURE SALE—RELIEVING PURCHASER FROM BID.
     The purchaser at foreclosure sale will not be relieved from his purchase because taxes and interest on a mortgage, which under the terms of sale are not for him to pay, are unpaid, as the amount thereof may be deducted from the purchase price.
     [Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1627; Dec. Dig. § 564.*]

2. MORTGAGES (§ 537*) — FORECLOSURE — RELIEVING PURCHASER FROM BID — TITLE.

    The purchaser at foreclosure sale will not be relieved from his bid, on the ground of unmarketable title, because of a bay window on a corner house encroaching 2½ feet over the building line of the street; it being within the stoop line, it not being possible that any adjoining owner can be damaged thereby, the city having acquiesced in the construction for 15 years, and recently issued a permit therefor, and the possibility of the owner being compelled to remove it being so remote and improbable that the principle of de minimis applies.

    [Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 537.*]

3. MORTGAGES (§ 537*)—FORECLOSURE—RELIEVING PURCHASER FROM BID—PENDENCY OF APPEAL.

    Mere pendency of appeal, without stay, from judgment of foreclosure, is not an objection to title for which the purchaser at the sale will be relieved.

    [Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 537.*]

Action by Mathilda G. Ebert, sole acting executrix of Henry Ludeman, deceased, against Louis Hanneman and others. On motion by S. Clark Williams, purchaser at foreclosure sale, to be relieved of purchase. Motion denied.

Richard B. Kelly (Joseph Fettretch, of counsel), for plaintiff.
Albert A. Hovell, for purchaser.

CRANE, J. This motion is made in behalf of the purchaser at a foreclosure sale to relieve him of his purchase because of defects in the title to the premises. The property consists of seven two-story and attic frame cottages, built together upon a plot of ground 125 feet front by 108 feet 4 inches deep, situated at the southwest corner of Bay Thirteenth street and Benson avenue in the borough of Brooklyn.

Seven objections were raised to the taking of title, but the four urged upon this motion are: (1) That taxes for the year 1909, water rates for 1909 and 1910, assessments for sewers, November 24, 1908, June 2, 1910, and also June 9, 1910, have not been paid. (2) That the bay window on the corner house encroaches 2 feet 5 inches over the building line on Benson avenue. (3) That an appeal is pending from the judgment of foreclosure under which this sale was made. (4) That the interest on the first mortgage of $7,000 is due from an earlier date than June 1, 1910, stated in the terms of sale. The first and fourth objections may be disposed of by allowing the amounts due to be deducted from the purchase price.

As to whether or not the bay window is an incumbrance, a brief review of the situation, as well as the law, is necessary. The window is a very small construction projecting from the side of the building and like those to be seen upon many houses in the borough of Brooklyn. It is attached to the most northerly of the seven buildings, which was constructed in 1895. Beginning 2 feet 6 inches from the ground, it is about 12 feet high, made of wood, projects 2 feet 5 inches from the side of the house or building line on Benson avenue. In shape it is similar to the customary three-sided bay window attached to frame houses. A wooden picket fence is built upon the stoop or area line

on Benson avenue, and this bay window is 5 feet 7 inches inside that fence, or stop line. No objection is made to the fence, and no claim that the window projects over the sidewalk.

The lot upon which this corner house has been built is 18 feet front on Bay Thirteenth street and 108 feet 4 inches on Benson avenue, and the window is over 80 feet from the rear of the lot on Benson avenue, or the adjoining property. The building of the nearest adjoining owner on the same side of the street and within the same block is 85 feet distant from the center of this bay window, and his stoop projects 9 inches beyond it. No objection has ever been raised by the municipal authorities to this construction on the corner lot; but, on the contrary, a permit for the bay window has been issued by the borough president pursuant to article 10 of the Ordinances of the City of New York.

Section 50 of the charter provides as follows:

"All general ordinances relating to authorized structures, encroachments, or obstructions in or upon the street or sidewalks, by persons other than the authorities of the city of New York, or other public authorities, shall fix a definite license fee for every such authorized structure, encroachment, or obstruction, according to the character, extent, and duration thereof, and shall provide for the issuing of revokable licenses thereof."

Article 10, § 227, of the Code of Ordinances, reads as follows:

"Bay windows may be hereafter erected with a projection not more than three feet beyond the building line, provided that when the projection exceeds one foot beyond the building line the total number of feet in width occupied by all the bay windows on the same frontage of the same building shall not exceed seventy-five per cent. of the width of the frontage of the building on which they are located. When the total number of feet to width occupied by all the bay windows on the same frontage of the same building exceeds seventy-five per cent. of the width of the frontage of the building on which they are located, the projections shall not exceed one foot beyond the building line, nor shall the bay windows be carried higher than the sill course of the second-story windows."

Section 232 provides:

"A permit for the continuance of any now existing bay window which projects beyond the building line may be issued by the officer who, according to section 1 of this ordinance, has jurisdiction over the erection of a bay window at the same place [the Borough president]. The application for such permit must be in writing, and must be accompanied by a certified copy of the last assessed valuation of the property on which such bay window stands, which appears upon the books of the department of taxes and assessments, and must also be accompanied by a survey showing the dimensions of such bay window and also by the amount of the compensation due to the city for the privilege of continuing the bay window."

While the city authorities have no right by ordinances, licenses, or otherwise to permit adjoining property owners to erect permanent and substantial structures or obstructions upon or over the street, yet a certain reasonable occupation thereof for useful, appropriate, and harmless purposes has always been permitted without being considered a nuisance. Thus hydrants, stepping-stones, shade trees, coal holes, vaults, areaways, hitching posts, stoops, telegraph and telephone poles, swinging or structural awnings, signs, and sign posts, as well as bay windows, have occupied portions of the streets and sidewalks, or pro-

jected upon or over them, without being considered nuisances or unreasonable uses of the highway.

Wormser v. Brown, 149 N. Y. 163, 43 N. E. 524, decided that a bay window was not an unlawful incumbrance or obstruction; it being within the stoop line and causing no damage to adjoining owners. The bay window in question here is within the stoop line and can by no possibility obstruct the light or view of, or do damage to, adjoining owners. The Wormser Case, within the facts upon which it was decided, has never been overruled or departed from, but has been recognized and cited in all the authorities bearing upon this question.

Broadbelt v. Loew, 15 App. Div. 343, 44 N. Y. Supp. 159, affirmed 162 N. Y. 642, 57 N. E. 1105, decided that it was within the power of the common council of the city to pass appropriate ordinances regulating the subject of the fronts of buildings facing on public streets, and to grant permission to the owners thereof to occupy certain space beyond the building line for certain purposes, and that a bay window erected within the prescribed line was not an obstruction constituting a nuisance.

There is a marked distinction between the use of a street for any of the purposes above mentioned, including a bay window within the limits prescribed by the city ordinances, which cannot and does not injure or damage an adjoining owner, and the erection upon or over the sidewalk of a permanent and substantial structure which amounts to an appropriation of the street for private purposes. The one is very slight and harmless in its encroachment, and has been recognized as a reasonable and almost necessary use of the highway, while the other is an appropriation of public property as though it were a part of the adjacent owner's private land, which he had a right to build upon and inclose for his sole use. The latter might be termed an abuse of a useful privilege.

Thus, in Ackerman v. True, 175 N. Y. 353, 67 N. E. 629, the owner extended the main wall of his building out 3 feet 6 inches onto the sidewalk, to the injury of adjoining owners. The court referred to it as a permanent and substantial structure, distinguishing it from the Wormser Case upon the ground, among others, that the bay window in the latter was no practical interference with the street. Williams v. Silverman, 111 App. Div. 682, 97 N. Y. Supp. 945, was based upon a permanent and substantial structure extending from foundation to roof beyond the building line into the street. The structure in McMillan v. Klaw & Erlanger Construction Co., 107 App. Div. 407, 95 N. Y. Supp. 365, was 45 feet high and 4 feet out from the building line, admittedly causing great damage to the adjoining owner. In this case it was said:

"The Legislature of the state, * * * acting within the constitutional limitations, has authority to control the use of the street. * * * It may limit to a certain extent the use thereof by the public, providing that it does not invade the property rights of the individual, or destroy his property rights without compensation. * * * Familiar examples of the exercise of this power are seen in the appropriation of a portion of the streets for * * * areaways, bay windows, stoops, and cellarways."

Like application of this rule and the same distinction was made in People ex rel. Cross Co. v. Ahearn, 124 App. Div. 840, 109 N. Y. Supp. 249, City of New York v. Knickerbocker Trust Co., 104 App. Div. 223, 93 N. Y. Supp. 937, and City of New York v. Rice, 198 N. Y. 124, 91 N. E. 283.

The bay window of this corner house on Benson avenue is not such an obstruction as justifies the purchaser in rejecting the title, or warrants the court in relieving him of his purchase. As no adjoining owner can possibly be damaged, and the municipality has acquiesced in the construction for 15 years, recently issuing a permit therefor, the possibility of the owner being compelled to remove this window is so remote and improbable that the principle "de minimis non curat lex" applies. Ferry v. Sampson, 112 N. Y. 415, 20 N. E. 387. Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634. Like the erection of awnings, the encroachment of this bay window is too unsubstantial in nature to be seriously considered as a public nuisance. City of New York v. Rice, supra. Such was considered the projection of piers in Empire Realty Corporation v. Sayre, 107 App. Div. 415, 95 N. Y. Supp. 371, and the encroachment of stoop and newel posts in Levy v. Hill, 70 App. Div. 95, 75 N. Y. Supp. 19, affirmed 174 N. Y. 536, 66 N. E. 1112.

Whether an encroachment makes a title unmarketable must be determined upon the merits and facts of each particular case (Ungrich v. Shaff, 119 App. Div. 843, 105 N. Y. Supp. 1013), and the situation of the premises, together with the nature of the construction of this building at Bay Thirteenth street and Benson avenue, clearly indicates that the title is not defective because of the bay window. A mere glance at the structures projecting from the building line in the form of stoops, balconies, verandas, platforms, and the like on nearly every street in the city will indicate what havoc would necessarily be created if any such rule was actually applied as the petitioner here seeks to enforce.

The objection to the title because an appeal is pending from the judgment of foreclosure, although no stay was granted, is only worthy of consideration by reason of the diligence of the able counsel for the purchaser and the elaborate brief he has prepared. Section 1351 of the Code prescribes that security is not required to perfect an appeal; but, except where it is otherwise especially prescribed by law, the appeal does not stay the execution of the judgment or order appealed from, unless the court from which the appeal is taken, or a judge thereof, makes an order directing such stay. If the appeal from the judgment is sufficient ground for the rejection of a title passing on the sale thereunder, this provision of the Code is a nullity. The judgment would be effectually stayed without any order for that purpose. The reasons why such an appeal cannot be an objection to the title, and why a purchaser in good faith is protected by the judgment, are fully set forth in Hening v. Punnett, 4 Daly, 543.

In view of what is above set forth, I shall deny the purchaser's motion to be relieved of his bid at the foreclosure sale; the objections raised by him being entirely insufficient.